## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**JOSHUA JORDAN**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 19-2786**

**JASON KENT, WARDEN**                        **SECTION "D"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

The petitioner, Joshua Jordan, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On March 4, 2013, Jordan was

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 3.

indicted by a Washington Parish grand jury for distribution of oxycodone.[3]  He entered

a not guilty plea on April 9, 2013.[4]  The Louisiana First Circuit Court of Appeal

summarized the facts established at trial as follows:

> The defendant and his girlfriend, Breann Nolan, lived with the
> defendant's mother, Judith Jordan (Jordan).  On August 15, 2012, the
> defendant, Jordan, and Nolan went to the defendant's doctor appointment in
> Slidell, Louisiana.  A fight ensued after they returned home from the
> appointment, and Jordan decided to spend the night at her daughter's home.
> The following morning, August 16, 2012, Jordan returned home.  She planned
> to leave out the defendant's medication for the day, which he had been
> prescribed at his doctor's appointment the previous day, but was unable to
> locate his pills.  According to Jordan, she hid the defendant's pills on her
> closet shelf, and he did not know where they were.  Shortly after she got off
> work at 5:00 p.m., Jordan returned home with her daughter and discovered the
> defendant lying on the floor in the living room.  They also found Nolan lying
> unresponsive on the couch in the living room.
>
> Jordan's daughter called 911, and Bogalusa Police Department Officer
> Jeff Bergeron was dispatched to the home.  When Officer Bergeron arrived,
> Nolan was being treated by emergency medical services, and the defendant
> was stumbling around, exhibiting slurred speech, and stating that his head hurt.
> The defendant was subsequently taken to the hospital by ambulance.
>
> Officer Bergeron entered the home in order to investigate the matter and
> located two oxycodone pills underneath the coffee table in the living room
> near where Nolan was found.  There were pill bottles and knives all throughout
> the house.  In the back bedroom, he found a nightstand with a spoon, residue
> and several empty pill bottles on top of it.  One bottle, labeled 30 milligrams
> of oxycodone, was prescribed to the defendant and filled on August 15, 2012.
> The other bottle was labeled as a prescription for 1 milligram of clonazepam,
> prescribed to Nolan on August 14, 2012.
>
> After completing the investigation inside the home, Officer Bergeron
> drove to the hospital emergency room to check Nolan's status.  He was met by
> a security officer who turned over a bag of twenty-seven oxycodone pills and

---

[3]St. Rec. Vol. 1 of 5, Indictment, 3/4/13.  Oxycodone, generic for the brand Roxicodone, is an opioid narcotic analgesic used to relieve moderate to severe pain.  https://www.webmd.com/.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 4/9/13.

one empty pill bottle found in Nolan's bra.  According to the prescription information on the bottle, it was for 100 milligrams of Quetiapine and was issued to the defendant on April 25, 2012.  The security officer also turned over an empty pill bottle of Klonopin found on Nolan and issued to her on July 19, 2012.

Nolan remained on life support in the hospital until August 20, 2012, when she was taken off life support and pronounced dead.  The cause of her death was polysubstance drug toxicity of benzodiazepines and opiates.  Drug screens performed on Nolan on August 16, 2012, revealed that she was positive for opiates (includes oxycodone), benzodiazepines (includes Klonopin), and marijuana.  After Nolan's death, her blood tested positive for oxycodone, clonazepam (Klonopin), paroxetine (Paxil), and marijuana at autopsy.

In January 2013, while incarcerated for an unrelated offense, the defendant was interviewed by Bogalusa Police Department Lieutenant Wendell O'Berry.  During the interview, Lieutenant O'Berry learned that the defendant and Nolan lived together for several months.  The defendant told Lieutenant O'Berry that he and Nolan used drugs and that he supplied oxycodone to Nolan.  He confirmed that he filled a prescription for oxycodone on August 15, 2012, and explained that he and Nolan crushed and snorted some of the pills.  The defendant told Lieutenant O'Berry that he removed the pill bottle from the closet where he had hidden it and took out four pills.  He gave one of the pills to Nolan and kept the other three to crush and snort himself.

State v. Jordan, No. 2014-KA-1732, 2015 WL 5968258, at *1-2 (La. App. 1st Cir. Oct. 13, 2015); State Record Volume 4 of 5, Louisiana First Circuit Court of Appeal Opinion, 2014-KA-1732, pages 2-4, October 13, 2015.

Jordan was tried before a jury on March 10 through 12, 2014, and found guilty as charged.[5]  At a March 31, 2014, hearing, the state trial court denied Jordan's motions for

---

[5]St. Rec. Vol. 1 of 5, Trial Minutes, 3/10/14; Trial Minutes, 3/11/14; Trial Minutes, 3/12/14; St. Rec. Vol. 2 of 5, Trial Transcript, 3/10/14; Trial Transcript, 3/11/14; St. Rec. Vol. 3 of 5, Trial Transcript, 3/12/14; St. Rec. Vol. 4 of 5, Trial Transcript (continued), 3/12/14; St. Rec. Vol. 5 of 5, Jury Verdict, 3/12/14.

new trial and post-verdict judgment of acquittal.[6]  After waiver of legal delays, the court sentenced Jordan to 25 years in prison with two years without benefit of parole, probation, or suspension of sentence.[7]   The court denied Jordan's oral motion to reconsider the sentence.[8]  The State thereafter filed a multiple offender bill asserting that Jordan had four prior felony convictions.[9]

At an April 28, 2014, hearing, the state trial court adjudicated Jordan a fourth felony offender.[10]  On May 29, 2014, the state trial court vacated Jordan's prior sentence and resentenced him as a multiple offender to 35 years in prison with the first two years without benefit of parole, probation or suspension of sentence.[11]  On June 9, 2014, the court denied Jordan's motion to reconsider the sentence.[12]

---

[6]St. Rec. Vol. 1 of 5, Sentencing Minutes, 3/31/14; Motion for New Trial, 3/18/14; Motion for Post-Verdict Judgment of Acquittal, 3/18/14; St. Rec. Vol. 4 of 5, Sentencing Transcript, 3/31/14.

[7]St. Rec. Vol. 1 of 5, Sentencing Minutes, 3/31/14; St. Rec. Vol. 4 of 5, Sentencing Transcript, pp. 4, 10-11, 3/31/14.

[8]Id.

[9]St. Rec. Vol. 1 of 5, Multiple Bill, 4/4/14.

[10]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 4/28/14; St. Rec. Vol. 4 of 5, Multiple Bill Hearing Transcript, 4/28/14.

[11]St. Rec. Vol. 1 of 5, Multiple Bill Sentencing Minutes, 5/29/14; St. Rec. Vol. 4 of 5, Multiple Bill Sentencing Transcript, p. 4-5, 5/29/14.

[12]St. Rec. Vol. 1 of 5, Trial Court Order, 6/9/14; Motion to Reconsider Sentence, 5/30/14.

On direct appeal, Jordan's appointed counsel asserted two errors:[13] (1) The evidence was insufficient to support the verdict because the State did not exclude every hypothesis of innocence, the trial court allowed prejudicial variance between the crime charged and the evidence admitted at trial, the State failed to prove corpus delicti and the interrogating officer's offer to help Jordan tainted the voluntariness of his statement. (2) The state trial court erred when it admitted the defendant's coerced inculpatory statement and published it to the jury over defense objections.  On October 13, 2015, the Louisiana First Circuit affirmed Jordan's conviction finding the claims meritless.[14]

On March 31, 2017, the Louisiana Supreme Court denied Jordan's related writ application without stated reasons.[15]  Jordan's convictions and sentences became final ninety (90) days later, on June 29, 2017, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

---

[13]St. Rec. Vol. 5 of 5, Appeal Brief, 2014-KA-1732, 2/27/15.

[14]Jordan, 2015 WL 5968258, at *1; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2014-KA-1732, 10/13/15.

[15]State v. Jordan, 217 So.3d 357 (La. 2017); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2015-K-2090, 3/31/17; La. S. Ct. Writ Application, 15-K-2090, 11/13/15 (filed by counsel); St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2015-K-2090, 11/13/15.

On June 15, 2018, Jordan signed and submitted to the state trial court a uniform application for post-conviction relief setting forth no grounds for relief other than to broadly indicate that his conviction was unconstitutional.[16]   Jordan also submitted a motion for extension of time to file a memorandum in support of the post-conviction application.[17]   On July 26, 2018, the state trial court granted the motion allowing Jordan 120 days to file a memorandum.[18]

On November 20, 2018, the state trial court denied the application based on Jordan's failure to file a memorandum by the deadline.[19]   On January 7, 2019, the state trial court denied Jordan's motion seeking a second extension noting that the application for post-conviction relief was already denied.[20]

On December 17, 2018, Jordan signed and submitted a second application for post-conviction relief accompanied by a memorandum in support listing eight grounds asserting ineffective assistance of counsel when his counsel failed to (1) subject the State's case to adversarial testing in violation of his right to a fair trial; (2) object to other crimes evidence; (3) present a mitigating defense and use an impeachment strategy

---

[16]St. Rec. Vol. 4 of 5, Uniform Application for Post-Conviction Relief, dated 6/15/18.

[17]St. Rec. Vol. 4 of 5, Motion for Extension, 7/5/18 (dated 6/15/18).

[18]St. Rec. Vol. 4 of 5, Trial Court Order, 7/26/18.

[19]St. Rec. Vol. 4 of 5, Trial Court Order and Reasons, 11/20/18.

[20]St. Rec. Vol. 4 of 5, Trial Court Order, 1/7/19; Motion for Extension, 11/25/18 (dated 11/16/18).

during trial; (4) file a motion for post-verdict judgment of acquittal and for new trial based on insufficiency of the evidence; (5) object to the State's failure to present sufficient evidence; (6) object to improper and unconstitutional jury instructions; (7) object to the State's failure to provide race-neutral reasons for striking black and Hispanic jurors; and (8) object to the cumulative errors committed before, during and after trial in violation of his equal protection and due process rights. Jordan separately asserted that he was unable to brief these claims, because he was denied the right to appellate review and a complete copy of the record with which to expound on his claims.

On February 11, 2019, the state trial court dismissed Jordan's application for failure to sustain his burden of proof under La. Code Crim. P. art. 930.2 and finding that his boilerplate claims were factually inaccurate and an improper attempt to get a copy of the trial transcript to search for possible errors.[21]  Jordan did not seek review of that ruling.

## II.    FEDERAL HABEAS PETITION

On April 11, 2019, after correction of certain deficiencies, the clerk of this court filed Jordan's petition for federal habeas corpus relief in which he asserts two grounds for relief:[22] (1) The evidence was insufficient to support the verdict because the State did not exclude every hypothesis of innocence, the trial court allowed prejudicial variance

---

[21]St. Rec. Vol. 4 of 5, Trial Court Order, 2/11/19.

[22]Rec. Doc. No. 3.

between the crime charged and the evidence admitted at trial and the State failed to prove corpus delicti. (2) The state trial court erred when it admitted the defendant's coerced inculpatory statement and published it to the jury over the defense's objections.

The State filed a response in opposition to Jordan's federal petition conceding exhaustion and timeliness and asserting that Jordan's claims are meritless.[23]  Jordan's reply to the State's opposition reiterates his arguments addressed in the petition.[24]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Jordan's petition, which, for reasons discussed below, is deemed filed on March 16, 2019.[26]  The threshold questions in habeas review under the amended statute

---

[23]Rec. Doc. No. 13.

[24]Rec. Doc. No. 17.

[25]The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378

are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Jordan's federal habeas petition was timely, state court review of his claims was exhausted and no claim is in procedural default. Nevertheless, Jordan is not entitled to relief on the claims asserted.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of

---

(5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court received and filed Jordan's deficient petition on March 22, 2019, and re-docketed it on April 11, 2019, when the deficiencies were corrected. The case was opened on April 26, 2019, when Jordan paid the filing fee after denial of pauper status. Jordan dated his signature on the petition on March 16, 2019. This is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to a federal court. Payment of the filing fee does not alter the application of the federal mailbox rule. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a

clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (citations omitted; brackets in original).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    SUFFICIENCY OF THE EVIDENCE

Jordan alleges that the evidence presented at trial was insufficient to prove distribution of oxycodone and only established that Nolan died after taken multiple

narcotics of her own will.  He asserts that the State failed to exclude all reasonable hypotheses of innocence and failed to prove the corpus delicti or that a crime actually occurred.  He also argues that the state trial court erred by allowing a prejudicial variance between the offense charged and the trial evidence related to Nolan's death.

The Louisiana First Circuit considered this claim on direct appeal.  Applying the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, the court held that circumstantial evidence corroborated Jordan's confession and proved that Jordan transferred his prescribed oxycodone to Nolan, who did not have a prescription for the drug, all of which was sufficient to establish the corpus delicti and each element of the crime of distribution of oxycodone.  This was the last reasoned opinion on the claim.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning."); Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Louisiana law allows proof of a crime by both direct and circumstantial evidence.  "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis

of innocence." La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson.  Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).  To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So.2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So.2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So.2d at 208.  Thus, a conviction may constitutionally rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence."  Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991).

In addition, Louisiana's "corpus delicti" doctrine, which requires evidence to corroborate a confession to prove a crime occurred, is a state law doctrine that is not constitutionally mandated.  Lemons v. Cain, 339 F. App'x 494, 497 (5th Cir. 2009) (citing West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996) (same as to Texas law)).

Instead, "in challenges to state conviction under 28 U.S.C. § 2254, only <u>Jackson v. Virginia</u> need be satisfied, even if state law would impose a more demanding standard of proof." (brackets omitted) <u>West</u>, 92 F.3d at 1394 (quoting <u>Schrader</u>, 904 F.2d at 284). The appropriate standard of review for this federal habeas court remains <u>Jackson</u>.

Under <u>Jackson</u>, a federal habeas court addressing a sufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319; <u>Williams v. Cain</u>, 408 F. App'x 817, 821 (5th Cir. 2011); <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U.S. at 324 n.16).

The court's consideration of the sufficiency of the evidence extends only to what was presented to the factfinder at trial. <u>See</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting <u>Jackson</u>, 443 U.S. at 324) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial"). Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 F.

14

App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the factfinder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  This court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.  Miller, 200 F.3d at 281.

Jordan was charged with distribution of oxycodone in violation of La. Rev. Stat. § 40:967(A)(1), which provides in part that it is unlawful for any person knowingly or intentionally to distribute a controlled dangerous substance classified in Schedule II.

15

Oxycodone is a Schedule II controlled substance.  La. Rev. Stat. § 40:964, Schedule II, Part (A)(1)(p).  To prove distribution of a Schedule II substance, the State must show (1) delivery or physical transfer of the controlled dangerous substance, (2) guilty knowledge of the controlled dangerous substance at the time of transfer, and (3) the exact identity of the controlled dangerous substance.  State v. Sullivan, 216 So.3d 175, 180 (La. App. 2d Cir. 2017); State v. Johnson, 825 So.2d 1230, 1233 (La. App. 4th Cir. 2002).

Under Louisiana law, "distribute" means to transfer possession or control of a controlled dangerous substance to an intended recipient.  See La. Rev. Stat § 40:961(14); State v. Cummings, 668 So.2d 1132, 1135 (La. 1996); State v. Martin, 310 So.2d 544, 546 (La. 1975).  The transfer can be by "physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner."  La. Rev. Stat. § 40:961(14); State v. Chatman, 599 So.2d 335, 346 (La. App. 1st Cir. 1992) (citing State v. Gentry, 462 So.2d 624, 627 (La. 1985)).  A person is a "distributor" when he "delivers a controlled dangerous substance."  La. Rev. Stat. § 40:961(15).

Distribution of a controlled dangerous substance is a general intent crime.  State v. Pierre, 869 So.2d 206, 211 (La. App. 5th Cir. 2004).  General criminal intent is present "whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure

16

to act." La. Rev. Stat. § 14:10(2).  General intent may be inferred from the circumstances of the transaction and proven by direct or circumstantial evidence.  See State v. Brokenberry, 942 So.2d 1209 (La. App. 2d Cir. 2006); State v. Culp, 17 So.3d 429 (La. App. 2d Cir. 2009).  Determination of whether the requisite intent is present in a criminal case is exclusively for the trier of fact.  State v. Brown, 92 So.3d 579, 585 (La. App. 2d Cir. 2012) (citing State v. Huizar, 414 So.2d 741 (La. 1982)).

At trial, the jury heard Jordan's January 7, 2013 video recorded statement to Bogalusa Police Lieutenant Wendell O'Berry in which Jordan stated that he supplied Nolan with oxycodone for her use.[27]  He explained that they crushed and snorted some of the pills he received on August 15, 2012.  He also stated that he took the pill bottle out of the closet where it was hidden, removed four pills and gave one pill to Nolan.

In addition to Jordan's recorded confession, the jury received evidence at trial that Jordan and Nolan met in July 2012 while being treated in Greenbriar Hospital, a drug rehabilitation facility.[28]  In August 2012, Nolan and Jordan lived together at his mother's

---

[27]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 88-90 (Lieutenant Wendell O'Berry), 3/12/14.

[28]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 34-35, 48 (Debbie Nolan), p. 56 (Judith Jordan), 3/11/14.

home in Bogalusa.[29] On August 15, 2012, Jordan filled his prescription for one-hundred-twelve (112) 30-milligram tablets of oxycodone.[30]

On the evening of August 16, 2012, Jordan's mother arrived at the house and could see through the door that Jordan appeared to be asleep on the floor and Nolan appeared to be asleep on the sofa.[31] Jordan eventually awoke to let her and her daughter into the house.[32] Nolan remained unconscious and unresponsive, so they called 911.[33]

When police arrived, Jordan was stumbling around, had slurred speech and complained that his head hurt.[34] He was taken to the hospital to be checked.[35] Nolan never regained consciousness and was taken by emergency personnel to the hospital.[36]

On searching the home, the police found two oxycodone pills on the floor under the coffee table near where Nolan was found.[37] Jordan's empty oxycodone prescription

---

[29]Id. at pp. 35-37, 48 (Debbie Nolan); pp. 58-60 (Judith Jordan).

[30]Id. at pp. 60-61, 68-69, 89 (Judith Jordan); pp. 115 (Officer Jeff Bergeron). The jury also heard that Jordan was injured in an accident in 2005 and remained on oxycodone and other pain and depression medications through 2012. Id. at pp. 55-58 (Judith Jordan).

[31]Id. at pp. 72-73 (Judith Jordan).

[32]Id.

[33]Id.

[34]Id. at p. 98 (Officer Bergeron)

[35]Id. at pp. 74-75 (Judith Jordan); pp. 101 (Officer Bergeron).

[36]Id. at p. 74 (Judith Jordan).

[37]Id. at pp. 101, 103-104, 111-112, 114 (Officer Bergeron).

bottle, a powdery residue, and a number of other empty prescription bottles were located in Jordan's bedroom and around the house.[38]  This included an empty prescription bottle of clonazepam labeled for Nolan and filled August 14, 2012.[39]

At the hospital, Nolan was found to be in possession of 27 oxycodone pills and an empty prescription bottle for quetiapine labeled for Jordan and filled April 25, 2012.[40] She also had an empty prescription bottle of Klonopin labeled for her and filled July 19, 2012.[41]  The drug screening done on her arrival at the hospital tested positive for tetrahydrocannabinol (THC or marijuana) and both benzodiazepines and opiates, categories of drugs that include Klonopin and oxycodone.[42]

---

[38]Id. at pp. 101-102, 103, 106 (Officer Bergeron).

[39]Id. at p. 103 (Officer Bergeron).  Clonazepam is the generic name for Klonopin which is an anticonvulsant or antiepileptic drug used to control seizures or treat panic attacks. https://www.webmd.com/.

[40]Id. at p. 107-111 (Officer Bergeron).  Officer Bergeron identified this as a bottle of Klonopin. Quetiapine is generic for the brand Seroquel, an anti-psychotic drug used to treat certain mental and mood conditions, such as schizophrenia, bipolar disorder and sudden episodes of mania or depression associated with bipolar disorder.  https://www.webmd.com/.

[41]Id. at pp. 107, 109 (Officer Bergeron).  Klonopin is the brand name for clonazepam previously defined.  https://www.webmd.com/.

[42]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 33-34, 37 (Dr. Michael Defatta), 3/12/14. Benzodiazepines are tranquilizers like Valium or Xanax.  https://www.webmd.com/.  Opiates are drugs derived from opium poppy and are narcotic sedatives that reduce pain and induce sleep. https://www.medicinenet.com/.

Nolan died on August 20, 2012, and the cause of death was polysubstance drug toxicity of benzodiazepines and opiates or a multiple-drug overdose.[43]  The body fluid tests done at the autopsy also were positive for tetrahydrocannabinol (THC or marijuana) and both benzodiazepines and opiates, which specifically indicated the presence of oxycodone, clonazepam (Klonopin) and proxetine (Paxil).[44]  The only oxycodone prescription bottle found by police was for a prescription issued to Jordan.[45]

The jury received credible circumstantial evidence to establish beyond a reasonable doubt that Jordan handed Nolan one or more pills known to him to be oxycodone pills that were prescribed to him, not her, by his physician.  Her receipt and use of the oxycodone knowingly given to her by Jordan was established by the presence of oxycodone in her urine and blood at the time of her overdose and death.

The jury was well within its province to reject or discredit the defense's claim that Nolan took Jordan's medicine from Judith Jordan's closet on her own.  The assessment of the credibility of witnesses is beyond the scope of habeas review.  Schlup v. Delo, 513 U.S. 298, 330 (1995).  Moreover, "it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos

---

[43]Id., pp. 33-34, 38 (Dr. Defatta).

[44]Id. at pp. 34-35 (Dr. Defatta).  Proxetine is generic for the brand Paxil, used to treat depression, panic attacks, obsessive compulsive disorder, anxiety disorders and post-traumatic stress disorder. https://www.webmd.com/drugs/.

[45]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 101-102, 103, 106 (Officer Bergeron), 3/11/14.

v. Smith, 565 U.S. 1, 3 (2011) (citing Jackson, 443 U.S. at 307). The evidence at trial was more than sufficient to prove to a reasonable jury each element of distribution of oxycodone by Jordan.

Jordan has not shown that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law. He is not entitled to federal habeas relief on this claim.

## VI.   DENIAL OF MOTION TO SUPPRESS STATEMENT

Jordan alleges that the state trial court should have excluded his inculpatory statement which he claims was given after promises of leniency, inducements, and implied promises. Jordan claims that he thought that giving the statement would help his release on his then-current charges rather than stand as evidence of his guilt in Nolan's death. He also asserts that the lack of corroborating evidence is indicative of a coerced statement.

The record shows that, on the morning of March 11, 2014, the second day of trial, the state trial court heard Jordan's request to exclude certain portions of the video recorded statement on grounds that the statement referenced already-excluded other crimes evidence.[46] At the hearing, Jordan's counsel indicated that the defense was not contesting the constitutionality of the statement, that Jordan was adequately advised

---

[46]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 5-11, 3/11/14.

21

rights under <u>Miranda</u> or that the statement was free and voluntary.[47]  The only issue asserted by the defense was whether the DVD should be redacted to exclude other crimes evidence.

On the morning of March 12, 2014, the third day of trial, the state trial court granted in part Jordan's request to redact certain parts of the DVD of Jordan's inculpatory statement.[48]  Jordan's counsel then orally moved to suppress the entire recorded statement on several grounds including that it was coerced.[49]

During the hearing on the motion, Lieutenant Wendell O'Berry testified that on January 7, 3013, he met with Jordan in the detective's office at the Bogalusa courthouse, while Jordan was held in the Bogalusa City Jail for unrelated reasons.[50]  Jordan signed an advice of rights form waiving his rights which had been read and explained to him.[51]  The officer spoke with Jordan about the incidents that occurred on August 16, 2012 that led to Nolan's death.[52]  Jordan gave a preliminary statement off camera describing his

---

[47]<u>Id.</u> at p. 6.

[48]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 3-7, 3/12/14.

[49]<u>Id.</u> at pp. 7-13.

[50]<u>Id.</u> at p. 71.

[51]<u>Id.</u> at pp. 65, 66.

[52]<u>Id.</u> at pp. 64-65.

relationship with Nolan and the events that occurred on August 16, 2012.[53]  A summary of the unrecorded statement was included in Lieutenant O'Berry's report.[54]

Jordan also gave a video recorded statement with Lieutenant O'Berry and Captain Bullen present during which he reiterated his answers and statements about the events leading up to Nolan's overdose.[55]  Lieutenant O'Berry denied that he coerced Jordan or made any promises to him.[56]  He also denied using threats or abuse.[57]  Lieutenant O'Berry also testified that the officers made no offer to help Jordan.[58]  He recalled that Jordan only wanted to know how soon he could be returned to the Franklinton jail because he did not want to stay in the Bogalusa City Jail.[59]  The Lieutenant testified that Jordan's transport and housing location were not in their control.[60]

---

[53]Id. at pp. 66-67.

[54]Id. at p. 67.

[55]Id. at pp. 66-68.

[56]Id. at pp. 65-66.

[57]Id. at pp. 65-66, 77.

[58]Id. at pp. 67-68, 77.

[59]Id. at pp. 67-68.

[60]Id.

At the conclusion of the hearing, the state trial court summarily denied the motion to suppress based on the testimony and the court's viewing of the video.[61]  The DVD as redacted by the state trial court was played for the jury at trial.

Jordan's appointed counsel asserted on direct appeal that the state trial court erred in admitting the coerced statement over defendant's objections.[62]  Based on the testimony at the suppression hearing, the Louisiana First Circuit found no error in the state trial court's denial of the motion to suppress.  This was the last reasoned opinion on the claim. Wilson, 138 S. Ct. at 1192.

The admissibility of a confession or inculpatory statement is a mixed question of law and fact.  Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U .S.C. § 2254(d)(1); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir. 1998).  In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact, if they are fairly supported by the record.  Miller, 474 U.S. at 117.  Similarly, the habeas standards of review oblige federal judges to respect credibility determinations made by the state court trier of fact.  Pemberton v. Collins, 991

_____

[61]Id. at p. 81.

[62]St. Rec. Vol. 5 of 8, Appeal Brief, pp. 17-20, 2014-KA-1732, 2/27/15.

F.2d 1218, 1225 (5th Cir.1993) (citing Sumner v. Mata, 455 U.S. 591, 597 (1982)); Self v. Collins, 973 F.2d 1198, 1204 (5th Cir. 1992); see Miller, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness). However, if the underlying facts as determined by the state courts indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination. Miller, 474 U.S. at 117; ShisInday, 511 F.3d at 522.

Under Miranda v. Arizona, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him. Id., 384 U.S. at 444-45. These rights may be waived as long as the waiver is knowing and voluntary. Moran v. Burbine, 475 U.S. 412, 421 (1986).

Two inquiries determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. Moran, 475 U.S. at 421; Soffar v. Cockrell, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception. Moran, 475 U.S. at 421. Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. Id.

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'"  <u>Soffar</u>, 300 F.3d at 596 (quoting <u>Moran</u>, 475 U.S. at 424).  Thus, coercive police conduct is a necessary prerequisite to a finding that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.  <u>Carter v. Johnson</u>, 131 F.3d 452, 462 (citing <u>Colorado v. Connelly</u>, 479 U.S. at 157, 163-67 (1986)).  The court must consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 224 (1973).

In this case, Jordan has not challenged the factual conclusions reached by the state trial court or the Louisiana First Circuit as to the details and circumstances surrounding his statement to Lieutenant O'Berry.  He also does not contest his understanding of his rights or that he was waiving those rights before making the inculpatory statements. Instead, Jordan makes unsupported arguments that he believed the officers would help him attain his release from jail if he answered their questions.

In light of his claims and in accordance with <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), the state trial court viewed the video recording of Jordan's statement and conducted a full evidentiary hearing on the admissibility of the inculpatory statement. The state trial court received testimony from the investigating officer and other evidence,

including the waiver of rights form signed by Jordan. The same evidence and testimony was considered by the Louisiana First Circuit on direct appeal.

After viewing the recording and reviewing the motion hearing testimony, the state courts found credible Lieutenant O'Berry's testimony that the officers did not coerce, promise or threaten Jordan on or off camera. The courts also credited O'Berry's statements that the "help" Jordan wanted was an indication when he would be sent from the Bogalusa jail back to the Franklinton jail. The state courts found no indication that Jordan was promised release from jail and no support for his claims that he was coerced by any promises made by the officers.

On federal habeas review, the court must presume that these factual determinations made by the state courts were correct because they are supported by the record. The presumption of correctness applies to the state court's factual findings that the officers did not coerce, promise or threaten Jordan and that Jordan made the inculpatory statements after he was advised of his rights pursuant to Miranda, that he understood his rights and that he voluntarily waived those rights before making his statements. See Pemberton, 991 F.2d at 1225.

To overcome the presumption of correctness as to these findings, Jordan must rebut them by clear and convincing evidence, which he has not done. In his federal habeas petition, Jordan merely repeats the conclusory allegations of coercion and promises asserted by his appointed appellate counsel and which were already addressed

27

by the state courts. Jordan's allegations are unsupported by any evidence adduced at the motion hearing, at trial, on appeal or otherwise.

The transcripts of the suppression hearing and trial more than adequately support the state courts' determinations that Jordan's inculpatory statement was free and voluntary. This court on habeas corpus review must accept as conclusive the state courts' factual determinations that the challenged inculpatory statement was voluntary and was not a product of coercion.

For the foregoing reasons, the denial of the motion to suppress, denial of relief on appeal and the admission of the inculpatory statement at trial were not contrary to or an unreasonable application of applicable Supreme Court law. Jordan is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Joshua Jordan's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

28

with notice that such consequences will result from a failure to object. <u>Douglass v.</u>

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[63]

New Orleans, Louisiana, this _____27th_____ day of November, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[63]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

29